# People of the State of Illinois ex rel. v. The Drainage Commissioners.

1. DRAINAGE—*Power of the Commissioners to Alter the Boundaries of a District.*—Drainage Commissioners have no power, after the original organization of a drainage district, to change its boundaries except under the provisions of section 47¼, chapter 42, R. S. (3 Starr & Curtis, 458), authorizing a dissolution of the district in whole or in part.

Certiorari.—Appeal from the Circuit Court of Du Page County; the Hon. CLARK W. UPTON, Judge, presiding. Heard in this court at the October term, 1895. Affirmed. Opinion filed December 10, 1895.

## STATEMENT OF THE CASE.

This proceeding is instituted by a common law writ of certiorari, sued out of the Circuit Court of Du Page County by John Bollweg, as relator, for the purpose of having annulled and set aside certain proceedings of the Drainage Commissioners of Union District No. 1, of the towns of Milton and Winfield in Du Page county, Illinois, which are claimed by him to be illegal and void.

On November 8, 1886, a petition for the organization of Union District No. 1, of the towns of Milton and Winfield, in the county of Du Page and State of Illinois, setting forth the boundaries thereof, was filed in the office of the town clerk of the town of Milton. After the filing of the petition, the town clerk, in compliance with the statute, gave notice to each of the commissioners and they met November 10, 1886, and adjourned to November 19, 1886, at nine A. M. for the further completion of said Union District. The clerk then posted notices as required by law, that a meeting of the drainage commissioners would be held at the town clerk's office of the town of Milton, at the hour of nine o'clock on the 19th day of November, 1886 (which was not less than eight nor more than fifteen days from the date of said notice), for the purpose of organizing said drainage district. He also filed a copy of this notice in his office.

Pursuant to this notice, the commissioners met November

18, 1886, at 9 o'clock A. M. for the further completion of the said Union District; and thereupon proceeded to ascertain whether the petition contained the signatures of the requisite number of land owners.   The necessary affidavit, to be signed by two credible signers of the petition, was duly signed and sworn to by Jesse C. Wheaton, Sr., and H. H. Hadley, and filed with the commissioners.

At this meeting, the record shows that the commissioners, after reciting the beginning and terminus of said drain, viz., the beginning to be " at or near the Wheaton road," and the terminus " to empty into the Du Page river," after reciting the land over which it should pass, and after a full hearing upon the petition, found in favor of said petition, and thereupon made a written statement of their finding, which was entered of record.

The finding of the commissioners is in accordance with the statute.   After the finding of the commissioners in favor of the petitioners, the commissioners adjourned to November 27, 1886 (which was not less than eight, nor more than fifteen days), to meet on the ground of the proposed ditch.

On November 27, 1886, the commissioners went upon the lands of the proposed district and examined the same, and then and there duly adjourned to meet at the town clerk's office on December 10, 1886.

On December 10, 1886, the map, showing the district, was approved, and the district was duly organized and work was commenced.   A portion of the right of way was obtained. (John Bollweg, the petitioner in this suit, having signed a release on December 15, 1886, and another release on November 9, 1893.)

A special assessment was made and collected, and everything ran along smoothly until March 25, 1887, when the drainage commissioners considered the question of changing the boundaries of said ditch, and commissioner Stacey offered a resolution to that effect, that the lower end, or terminus, shall be on the west line of the land of John Weisbrook * * * which resolution was adopted.

At a subsequent meeting, held April 2, 1887, the proposi-

tion of each party entering into an agreement to build his own ditch was discussed, and leave was given the land owners to petition the commissioners to abandon the ditch.

A committee was appointed to carry out this proposition; and awaiting the action of this committee, the commissioners adjourned to meet at the call of the chairman.

As the record shows, this was all the action ever taken in reference to changing the boundaries or terminus of said ditch. It does not appear by the record that this committee ever reported nor that any further action in reference to this proposition was ever taken. The commissioners continued their control over said drainage district, making orders as late as August 20, 1890. In October, 1893, the old commissioners having gone out of office, and new commissioners having been elected, it was decided by them to complete the ditch of this drainage district, in accordance with the prayer of the original petition, and the order of December 10, 1886, organizing the drainage district, a part of the work having already been done. The attempted action of the old commissioners in reference to changing the boundaries of said ditch, was rescinded October 28, 1893, and an engineer was employed, a re-survey was made over the old route, the map completed and the ditch ordered constructed and completed, in accordance with the prayer of the original petition. James H. Hill, John Bollweg (the petitioner here) and Christian Fessler signed releases for the right of way; a special assessment was made, from which no appeal was ever taken by any one, a large portion of the work had been done, and contracts for most all the work had been let (John Bollweg agreeing to contract for the work across his own land) when this petition for a writ of certiorari was filed. Attorneys for appellant raised various questions for consideration and decision.

CHARLES WHEATON and T. M. MANNING, attorneys for appellants.

E. H. GARY, J. F. SNYDER and GEO. W. BROWN, attorneys for appellees.

MR. JUSTICE LACEY DELIVERED THE OPINION OF THE COURT.

It appears from an examination of the record in the case that the appellee, drainage district, was fully organized according to the law, including that portion of territory extending to the Du Page river, attempted by subsequent order of the commissioners to be dropped from the district.

The portion of the record sought to be quashed by this proceeding was an order of the board of drainage commissioners entered of record and passed at a regular meeting of the board, October 28, 1893, annulling and rescinding a former order of the commissioners March 25, 1887, whereby the boundaries of the district were attempted to be changed from the original organization, so that the boundary of the lower end of the district would terminate on the west line of the land of John Weisbrook, and the ditch would also terminate there.

The questions have been ably presented by attorneys on both sides and many points raised, but in the view we take of the matter, it will not be necessary to notice all the questions presented.

It appears to us from an examination of the record that the district was legally and finally organized in December, 1886, and in that organization the portion excluded by the order referred to, of March 25, 1887, was included.

We are of the opinion that the commissioners had no power, after the original organization, to limit the district or change the boundaries, except under the provisions of the Farm Drainage Act, as provided in Sec. 47½, R. S., Starr & Curtis, which authorizes a dissolution; and the district in whole or in part can not be dissolved otherwise, and a district, possibly, can not be partially dissolved under that section, a question we need not decide. There is no provision of the statute authorizing a change of the district after it is fully organized. But if such an order, changing the district, is invalid, no reason is perceived why such an order may not be revoked by the drainage commissioners.

The order of restriction was void, and the subsequent order annulling it could only have the effect to undo the void act.

Such order should, therefore, stand of record for the purpose of removing a cloud on the district organization.

The judgment of the court below, quashing the writ of certiorari, is therefore affirmed.